UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JALIEN GARDNER, | ) |
| *Petitioner,* | ) ) ) |
| v. | ) 2:24-cv-00131-JPH-MJD |
| DUSHAN ZATECKY[1], | ) ) ) ) |
| *Respondent.* | ) ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Jalien Gardner has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. He challenges a prison disciplinary proceeding in which he was found guilty of conspiracy to traffic drugs and sanctioned with a 180-day loss of good-time credit and a one-step demotion in credit class, along with other non-custodial sanctions not relevant to this proceeding. Dkt. 9-5. For the reasons explained below, the disciplinary proceeding did not violate Mr. Gardner's due process rights and his habeas petition is **DENIED**.

---

[1] Petitioner Jalien Gardner was most recently in custody at Putnamville Correctional Facility, so the proper respondent is Dushan Zatecky, Warden of Putnamville Correctional Facility. The **CLERK is DIRECTED** to update the docket to reflect that Dushan Zatecky, in his official capacity, is the proper Respondent.

## I.
## Legal Background

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II.
## Factual Background

On October 23, 2023, Officer K. Nauman wrote a Conduct Report charging Mr. Gardner with conspiracy to traffic. Dkt. 9-1 at 1. The Conduct Report states:

> On 10/23/23 at approximately 13:48, I, CPO Nauman concluded part of an ongoing investigation regarding Offender Jailen (sic) Gardner 250285 and his attempts to conspire to traffic suboxone into ISF. Offender Gardner #250285, places recorded telephone calls to the number 317-993-4181, identified as utilized by Christine Taylor, girlfriend of Offender Gardner. On 09/28/2023, during recorded calls, Offender Gardner tells Taylor "Tryin to figure something out. Just need something done. Can you text this number for me? 317-289-0219, just be like "What's the latest we can meet?" In a later call, Offender Gardner asks Taylor "What'd I

> give you, 0219?" Taylor responded "317-289.." and Gardner stated "No that's the wrong number. It's 286. 286-0219." Offender Gardner advised "By Sunday or Monday, you'll get it back. Prolly sooner than that," and "Say 'what's the latest it gotta be done for B?' Her name's Nicole." During a later phone call, Taylor confirms "She's gonna call me tomorrow." Offender Gardner stated "You are in good hands, you ain't gotta do nothing. All we doin' is payin for the dogs. You ain't gotta do nothin else." "B" is in reference to Offender Brian Keefe 984020 and "Nicole" is in reference to Carrie Nicole Mitchell, the girlfriend of Offender Keefe (housed at ISF). On 09/28/2023, during recorded calls, Offender Keefe tells Mitchell "The donation has been confirmed." Offender Keefe also advised Mitchell "Jalien yelled in the window and said 'After 6' so call her after 6." In a later call, Mitchell confirmed "ol girl just messaged me." Offender Keefe tells Mitchell to say "I'm supposed to meet you to get something off of you." On 09/29/2023, during recorded calls, Offender Gardner tells Taylor "It's business right now. I gotta make it happen" and "All I need you to do is that favor for me, everything else is good." Based on my experience and the investigation, Offender Gardner was the "middle man" in supplying suboxone for Carrie Mitchell and Offender Keefe. Mitchell was later found to be in possession of 31 strips of suboxone. Offender Gardner supplies Mitchell's phone number to his callee.

Dkt. 9-1 at 1.

Mr. Gardner was notified of the charge on October 30, 2023 when he received a copy of the Conduct Report and the Screening Report. Dkts. 9-1; 9-3. Mr. Gardner pled not guilty to the offense, requested and was provided a lay advocate, and did not waive 24-hours' notice of the hearing. Dkt. 9-3 at 1. He did not list any witnesses that he wished to call at the disciplinary hearing, but did request the following evidence: "amount of hours [N]auman worked on case"; "Investigation case number"; "specifically the state forms, notes, papers, and all tangible items in the case file"; "Reason I was investigated"; and "Copy of order to investigate signed by warden." *Id.*; dkt. 9-4.

A hearing was held on November 9, 2023. Dkt. 9-5. Mr. Gardner appeared at the hearing, pled not guilty, and stated: "I was just talking about trying to get some dogs[.] I knew nothing about any strips." *Id.* The hearing officer considered staff reports, Mr. Gardner's statement, and phone calls played at the hearing and found that Mr. Gardner was guilty of Offense 111, "conspiracy/attempting/aiding or abetting conspiracy/attempting/aiding or abetting." *Id.* The hearing officer wrote: "[Disciplinary Hearing Officer] finds you guilty due to talking to Taylor giving her the phone number to Civ. Mitchell who is the girl friend of Offender Keefe who was then found in possession of suboxone." *Id.* The sanctions imposed included a 180-day loss of good-time credit and a one-step demotion in credit class, along with other non-custodial sanctions not relevant to this proceeding. *Id.*

Mr. Gardner appealed to the Facility Head and the Indiana Department of Corrections ("IDOC") Final Reviewing Authority, and both appeals were denied. Dkts. 9-6, 9-7. He then brought this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Dkt. 2.

### III.
### Analysis

Mr. Gardner raises three arguments in his Petition: (1) that the evidence was insufficient to establish his guilt; (2) that the "statement" lacks specificity and "does not create reasonable relation to the underlying conduct of another offender"; and (3) that he was denied five items of exculpatory evidence that he

4

requested for his hearing, so could not present a defense.  Dkt. 2 at 2-3.  The Court addresses each argument in turn.

### A. Sufficiency of the Evidence

Mr. Gardner argues in his Petition that "[t]he evidence utilized was insufficient to establish intent to conspire, aid or abet."  Dkt. 2 at 2.

The Respondent argues that the Conduct Report describes recorded phone calls between Mr. Gardner and Ms. Taylor regarding Mr. Keefe, another inmate, and Mr. Keefe's girlfriend, Carrie Nicole Mitchell, related to trafficking suboxone.  Dkt. 9 at 7-8.  He argues that the Conduct Report "relates [Mr.] Gardner's statements to offender Keefe, girlfriend Mitchell, and Gardner's girlfriend Christine Taylor that, in CPO Nauman's experience, showed Gardner was conspiring with them to commit class A offense 113, trafficking."  *Id.* at 8.  The Respondent notes that the Conduct Report "is supported by the Report of Investigation…, which details the investigation of phone calls using coded language to discuss money and drugs, as well as the phone calls that corroborate CPO Nauman's report."  *Id.*  He asserts that circumstantial evidence is sufficient to prove a conspiracy, and that Mr. Gardner's participation in the phone calls is circumstantial evidence of that participation.  *Id.* at 9.

Mr. Gardner did not file a reply.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary."  *Ellison*, 820 F.3d at 274.  The "some evidence"

standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56; *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.").

Under this standard, "courts 'are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.'" *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quoting *Hill*, 472 U.S. at 454); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) ("It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision."); *Ping v. McBride,* 888 F. Supp. 917, 922 (7th Cir. 1993) (stating that in a prison disciplinary case, it is not the proper function of the court "to reweigh conflicting evidence and to make credibility determinations") (citing *Viens v. Daniels,* 871 F.2d 1328 (7th Cir. 1989)).

Here, the phone calls, which were provided to the Court on an *ex parte* basis and summarized in the Conduct Report and the Report of Investigation (which the Court found could be filed on an *ex parte* basis because "its disclosure could be harmful to other individuals or compromise the security of

the facility," dkt. 14), provide "some evidence" that Mr. Gardner conspired with Mr. Keefe, Ms. Taylor, and Ms. Mitchell to traffic drugs. Mr. Gardner was charged with committing Offense 111, which prohibits "[a]ttempting by one's self or with another person or conspiring or aiding and abetting with another person to commit any Class A offense" and Offense 113, which prohibits "[g]iving, selling, trading, transferring, or in any other manner moving an unauthorized physical object to another person; or receiving, buying, trading, or transferring; or in any other manner moving an unauthorized physical object from another person without the prior authorization of the facility warden or designee." Dkts. 9-1, 9-8 at 2. The Hearing Report only lists the alleged offense as Offense 111, "conspiracy/attempting/aiding or abetting conspiracy/attempting/aiding or abetting." Dkt. 9-5 at 1. However, Offense 113 is the underlying offense which Mr. Gardner was charged with conspiring to commit, so it is relevant to the Court's analysis.

Mr. Gardner does not explain how the recorded phone calls do not support the charges in this case, instead simply asserting that the evidence was insufficient. But the phone calls summarized in the Conduct Report and the information contained in the Report of Investigation detail coded conversations between Mr. Gardner and Ms. Taylor (Mr. Gardner's girlfriend) and between Mr. Keefe and Ms. Mitchell (Mr. Keefe's girlfriend) that led Officer Nauman to conclude, based on his experience and training, that they constituted evidence of conspiring to traffic drugs. *See United States v. York*, 572 F.3d 415, 424 (7th Cir. 2009) ("Experts can determine, based on their

7

expertise, that certain words have drug-related meanings within the context of a single conversation."); *United States v. Ceballos*, 302 F.3d 679, 688 (7th Cir. 2002) (holding that DEA agent could testify that certain pronouns used in recorded conversations referred to drugs "because of the agents' vast experience with drug code language"). The recordings of those calls, submitted to the Court on an *ex parte* basis, support the Respondent's summary of those calls. *See* dkt. 15.

      Specifically, the Conduct Report details calls from Mr. Gardner to Ms. Taylor in which he told Ms. Taylor he was "[t]ryin to figure something out" and "[j]ust need[ed] something done"; asked her to text a phone number belonging to Ms. Mitchell and ask the person "[w]hat's the latest we can meet?"; told her "[b]y Sunday or Monday, you'll get it back. Prolly sooner than that"; told her to ask Ms. Mitchell "what's the latest it gotta be done for B? [referring to Mr. Keefe]"; explained the person Ms. Taylor would be communicating was Ms. Mitchell by stating "[h]er name's Nicole [referring to Ms. Mitchell]"; and told her "[y]ou are in good hands, you ain't gotta do nothing. All we doin' is payin for the dogs. You ain't gotta do nothin else." Dkt. 9-1 at 1. The Conduct Report also details calls where Mr. Keefe then told Ms. Mitchell in a phone call "[t]he donation has been confirmed" and "Jalien [referring to Mr. Gardner] yelled in the window and said 'After 6' so call her after 6." *Id.* It also details calls where Ms. Mitchell told Mr. Keefe "ol girl just messaged me" and Mr. Keefe told Ms. Mitchell to say "I'm supposed to meet you to get something off of you." *Id.* The

8

Conduct Report also describes a phone call where Mr. Gardner told Ms. Taylor "It's business right now. I gotta make it happen" and "All I need you to do is that favor for me, everything else is good." *Id.* It states that after these phone calls, Ms. Mitchell was found with 31 strips of suboxone. *Id.* The *ex parte* Report of Investigation details how the phone calls fit within the larger investigation into drug trafficking involving Mr. Gardner, Mr. Keefe, Ms. Taylor, and Ms. Mitchell. Dkt. 10.

The phone calls, as interpreted by Officer Nauman based on his experience, provided the hearing officer with "some factual basis" for his conclusions and constituted "some evidence" that Mr. Gardner was conspiring with Mr. Keefe, Ms. Taylor, and Ms. Mitchell to traffic drugs. *McPherson*, 188 F.3d at 786.

Mr. Gardner's argument that there was not sufficient evidence to find that he had committed Offense 111 does not provide a basis for relief.

### B. Lack of Specificity of Conduct

Mr. Gardner argues in his Petition that "[t]he statement lacks specificity and does not create reasonable relation to the underlying conduct of another offender." Dkt. 2 at 2.

In his response, the Respondent argues that "the factual circumstances are thoroughly and comprehensively described in the Report of Investigation," "[t]he hearing officer identified the evidence relied on as the Report of Investigation, the phone calls, conduct report, and [Mr.] Gardner's statement," and "[t]he hearing officer explained the finding of guilt was 'due to talking to

9

Taylor giving her the phone number to Civ Mitchell who is the girl friend of Offender Keefe who was then found in possession of suboxone.'" Dkt. 9 at 10 (quotation and citation omitted). He asserts that the Hearing Report "informed [Mr.] Gardner that he was being found guilty of conspiring with [Ms.] Taylor and [Ms.] Mitchell to supply drugs to another offender"; that it "specifies his co-conspirators and the substance being trafficked"; and that it "identified what actions [Mr.] Gardner took in furtherance of the conspiracy – giving [Ms.] Taylor the phone number of another person." *Id.*

Although somewhat unclear, it appears that Mr. Gardner is arguing that the Hearing Report was not sufficiently specific and did not sufficiently explain his connection to another offender to support the finding that he conspired to commit trafficking. "Due process requires that an inmate subject to disciplinary action is provided a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary actions." *Scruggs*, 485 F.3d at 941. The written-statement requirement is not "onerous," as the statement "need only illuminate the evidentiary basis and reasoning behind the decision." *Id.* "[W]hen the charge is straightforward, the [hearing officer] need say only that it believed the conduct report." *Calligan v. Wilson,* 362 F. App'x 543, 545 (7th Cir. 2009); *see also Jemison v. Knight*, 244 F. App'x 39, 42 (7th Cir. 2007).

The hearing officer listed the evidence that was considered in determining that Mr. Gardner was guilty of the charged offense. *See* dkt. 9-5

10

(referring to the phone calls, staff reports, and Mr. Gardner's statement).  The hearing officer also explained that Mr. Gardner was guilty of participating in a conspiracy to traffic drugs because he gave Ms. Taylor the phone number for Ms. Mitchell, who is Mr. Keefe's girlfriend, and Ms. Mitchell was found to be in possession of suboxone. Dkt. 9-5. The hearing officer's explanation of the finding of guilt was sufficiently specific. *See Jemison*, 244 F. App'x at 42 (holding that the hearing officer's statement "that it relied on staff reports and [the inmate's] own statement at the hearing" was sufficient because the hearing officer "had only to weigh [the officer's] statement against [the inmate's]").

Mr. Gardner's argument regarding the Hearing Report's lack of specificity does not provide a basis for relief.

### C. Denial of Evidence

In support of his Petition, Mr. Gardner argues:

> The accused requested exculpitory (sic) evidence that was not provided… The accused requested five (5) items of evidence for his hearing that were not provided. This denied him the ability to present a defense to the charges of A-111…. The [hearing officer] refused to produce requested evidence and has never cited "safety and security" as a reason for the denial[;] the [hearing officer] remained silent as to the reason for the [denial] of the requested exculpitory (sic) evidence.

Dkt. 2 at 2-3.

The Respondent argues in response that "[t]he screening report shows the response [to Mr. Gardner's evidence] requests was 'no,' but [Mr.] Gardner cannot show the evidence was not considered, that any of the requested evidence was relevant, or that he was entitled to any confidential information."

11

Dkt. 9 at 11. The Respondent acknowledges that prison authorities must provide an explanation for denying evidence, but argues that the reason for the denial does not need to be noted in the administrative record and that prison authorities can present their justification for the first time in court. *Id.* at 11-12. The Respondent notes that most of the evidence Mr. Gardner requested "would have been in the Report of Investigation, which provides the amount of time CPO Nauman spent on the case, the investigation case number, the tangible items in the case file, and the reason [Mr.] Gardner was investigated," all of which the hearing officer considered in finding Mr. Gardner guilty. *Id.* at 12. He asserts that Mr. Gardner has made no attempt to explain how the requested evidence would have been relevant; that it is not clear what he meant by "state forms, notes, papers" or "a copy of the order to investigate signed by the warden"; and that the number of hours Officer Nauman worked is not probative of whether Mr. Gardner conspired to traffic drugs. Dkt. 9 at 12. The Respondent contends that if IDOC was required to provide the Report of Investigation, that would have forced it to divulge information regarding the facility's investigative techniques, and that Mr. Gardner does not explain how having the Report of Investigation would have aided him in preparing a defense in any event. *Id.* at 12-13.

Due process affords an inmate in a disciplinary proceeding a limited right to present "evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. But due process is not violated unless the inmate is deprived of an

12

opportunity to present material, exculpatory evidence. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011), and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008). Prison authorities must explain the reason for denying evidence, *Piggie*, 342 F.3d at 666 (7th Cir. 2003), but the explanation does not need to be provided at the time of the hearing and instead can be provided "later," *Ponte v. Real*, 471 U.S. 491, 497 (1985).

The Court notes at the outset that any denial of evidence is subject to harmless error review. *Piggie*, 342 U.S. at 660 (harmless error doctrine applies to prison disciplinary cases). Mr. Gardner has made no effort whatsoever to explain the relevance of the evidence he requested or how his ability to present that evidence may have changed the outcome. That alone warrants denial of relief. Nevertheless, the Court specifically considers the evidence he requested.

First, Mr. Gardner requested "amount of hours [Officer Nauman] worked on case," "[i]nvestigation case number," "[r]eason I was investigated," and "[c]opy of order to investigate signed by warden." Dkt. 9-3 at 1. The Court cannot discern any reason why this information would have been relevant to Mr. Gardner's defense or would have aided his defense, and – as noted above – Mr. Gardner has not explained the relevance of any of that information. Further, Officer Nauman's efforts during the investigation, the investigation

13

case number, and the circumstances leading up to the investigation are included in the Report of Investigation, which the hearing officer considered. Any improper failure to provide this evidence was harmless error.

Second, Mr. Gardner requested "the state forms, notes, papers, and all tangible items in the case file." *Id.* To the extent that Mr. Gardner was seeking the Report of Investigation, the Respondent has explained that disclosing it would have created a security risk. "Prison authorities are not compelled to accept requests [for evidence] that threaten institutional goals." *Donelson v. Pfister*, 811 F.3d 911, 918 (7th Cir. 2016) (citation and quotation omitted); *see also Scruggs*, 485 F.3d at 940 (holding that prison officials are not "required to allow the presentation of evidence that could threaten institutional safety or correctional goals"); *Piggie*, 344 F.3d at 679 ("[W]e have had no trouble approving of non-disclosure [of video evidence] where prison officials have asserted a bona fide security justification, for example, that if the inmate were permitted to watch the tape, he might learn the location and capabilities of the prison surveillance system, thus allowing him to avoid detection in the future."). "[P]rison authorities who assert a security justification for nondisclosure [of video evidence] still have the burden of proving that their denial of requested evidence was not 'arbitrary or capricious.'" *Johnson v. Brown*, 681 F. App'x 494, 496 (7th Cir. 2017) (quoting *Piggie*, 277 F.3d at 925). The Respondent's explanation for why prison authorities did not provide Mr. Gardner with the Report of Investigation is sufficient. The Court has reviewed

the Report of Investigation and agrees that it contains information that, if disclosed to Mr. Gardner or other inmates, could undermine the facility's ability to investigate drug trafficking in the future.  *See also* dkt. 14 (Court's Order allowing the Respondent to file the Report of Investigation on an *ex parte* basis because it "contains sensitive information such that its disclosure could be harmful to other individuals or compromise the security of the facility"). Withholding the Report of Investigation – to the extent that is what Mr. Gardner was seeking when he asked for "all tangible items in the case file" – was justified.

Mr. Gardner's argument that he was improperly denied the evidence that he requested is not a ground for relief.

## IV.
## Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government."  *Wolff*, 418 U.S. at 558.  There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Gardner to the relief he seeks. Accordingly, Mr. Gardner's Petition for a Writ of Habeas Corpus, [2], is **DENIED** and the action **DISMISSED**.  Judgment consistent with this Order shall now issue.

According to the IDOC website and the docket in one of Mr. Gardner's underlying criminal cases, it appears that Mr. Gardner was released from IDOC

custody on probation with Vigo County Community Corrections. Since his release, Mr. Gardner has not updated his address with the Court. In an attempt to ensure that Mr. Gardner receives the Court's Order, the Court is sending it to Mr. Gardner at both his outdated address on the docket and at Vigo County Adult Probation so that the Probation Department may forward the Order to him or otherwise ensure his receipt of it.

**SO ORDERED.**

Date: 12/5/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana


Distribution:

All electronically registered counsel

Jalien Gardner
250285
PUTNAMVILLE – CF
PUTNAMVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1946 West U.S. Hwy. 40
Greencastle, IN 46135

Jalien Gardner
Vigo County Adult Probation
120 S. 1st St.
Terre Haute, IN 47807